## Kulka *v.* Nemirovsky (et al., Appellant).

Argued January 28, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN and BARNES, JJ.

*Adrian Bonnelly,* with him *Albert H. Friedman* and *Peter P. Zion,* for appellant.

*Herbert A. Barton,* for appellee.

OPINION BY MR. CHIEF JUSTICE KEPHART, March 23, 1936:

On December 4, 1930, Joseph Kulka brought an action in trespass against Samuel Nemirovsky, individually, and trading as Samuel Machinery Company, in which he recovered a verdict of $10,000 on April 4, 1933. A judgment n. o. v. was entered for the defendant and, on appeal to this court, that judgment was reversed and the verdict of the jury reinstated on January 30, 1934, *(Kulka v. Nemirovsky,* 314 Pa. 134). One half of this judgment was paid by an insurance carrier, leaving a balance due of $5,000 with interest from April 10, 1933. To recover it, a levy was made on February 15, 1934, upon the property located at 137 N. 3d Street, where the Samuel Machinery Company, a partnership and, after it, The Samuel Machinery Company, Inc., a corporation, had carried on a secondhand machinery business. The latter filed a property claim and, an issue being framed, the parties went on trial before a judge without a jury.

The question presented was whether the persons who formed the partnership were identical with those who formed and were the sole members of the corporation to which the property of the partnership was transferred. The facts developed on trial were not in serious dispute, and it will serve no useful purpose to recite them here. The corporation which succeeded the Samuel Machinery Company, the unincorporated association, was capitalized at $10,000, divided into 100 shares. A bill of sale was executed by Samuel Nemirovsky, Goldie, his wife, and Morrison, a son, members of the partnership, transferring all the assets of the Samuel Machinery Company to the Samuel Machinery Company, Inc., the corpora-

tion; they are specified in this agreement as coöwners of the property transferred. The shares were to be divided among the three of them; one was to receive 34 shares and the other two were each to receive 33 shares, although the articles of incorporation specified otherwise. Of the shares received by Goldie, there is testimony that a son Phillip was to receive one-half. No shares were actually ever issued. The court below concluded from the evidence before it that the Samuel Machinery Company, the unincorporated association, was a partnership composed of three members, Samuel, Morrison and Goldie, and that the corporation, Samuel Machinery Company, Inc., was composed of the identical persons. It further concluded that, because of the identity of the owners of these two businesses, the property transferred to the corporation was liable for the Kulka judgment. This appeal followed.

We dismiss without merit appellant's argument that there is no justification for the court's conclusion that there were others than Samuel and Morrison interested in the unincorporated association. We agree with that finding for, on the whole, it is obvious that the son, Phillip, and the mother, Goldie, were accepted by Samuel and Morrison, the two active members of the concern, as having rights in the assets and profits of the partnership. The evidence shows Phillip was treated as entitled to the payment of salary and Goldie as owner of part of the assets of the business. Whether the conclusion be drawn that the business operated under the fictitious name of Samuel Machinery Company was made up of Samuel, Morrison and Goldie, or of Samuel, Morrison, Goldie and Phillip, the identity of the shareholders of the corporation which took over its assets is similar to that of the partnership which preceded it.

That Kulka was a creditor of the unincorporated association cannot be questioned even though at the time that the corporation was formed and the assets of the partnership transferred to it his claim had not been liq-

uidated. Recently in *Merwine v. Mt. Pocono Light & Improvement Co.,* 304 Pa. 517, 523, we stated: "A person having a cause of action capable of adjustment and liquidation upon trial is a creditor. It is immaterial whether the cause of action arose out of contract or tort."

We have frequently considered the liability of a successor corporation for a debt of the corporation from which it derived all of its assets. In *Montgomery-Webb Co. v. Dienelt,* 133 Pa. 585, we held that where the shareholders of the new corporation are the same as the old corporation, the former cannot hide behind the latter so as to prevent a creditor from asserting the identity as a fact for the purpose of securing payment out of the property which was liable therefor under one name and which is still liable under another. Where such identity of shareholders exists, creditors cannot be forced to forego their rights against the tangible assets of the old company though in the ownership and possession of the new company. They may follow the assets into the hands of the transferee. To impose such liability, it was stated in *Art Society of Pittsburgh v. Leader Publishing Co.,* 60 Pa. Superior Ct. 548: "It should appear that the officers and stockholders [of the new corporation] had such interest in the old corporation that a creditor could assert their identity, that the property was partly theirs under one name is still theirs under another, so that in fact the transaction was to a certain extent merely a change of name, and the new stockholders were not purchasers for value."

Where individuals have transferred their property to a corporation whose shares were owned exclusively by them, we have likewise disregarded the fiction of a corporate entity separate and distinct from its members, and have probed to discover whether the corporation was not, in fact, the individuals cloaked in the guise of a corporation. See *Atlas-Portland Cement Co. v. American Brick and Clay Co.,* 280 Pa. 449, 456; *Delphia Knitting*

*Mills Co. v. Richards,* 62 Pa. Superior Ct. 9. In *Pennsylvania Knitting Mills of Reading v. Bibb Mfg. Co.,* 12 Pa. Superior Ct. 346, the court stated: "When individuals or corporations transfer their property to a new corporation substantially owned and controlled by the transferors, the new company takes the property subject to the claims of the nonassenting creditors of the transferors."

We have considered the liability of a corporation which succeeded to the assets of a partnership in but one case. In *Coaldale Coal Co. v. State Bank,* 142 Pa. 288, the question arose. Under the circumstances of that case, there was no liability, but it differs from the present situation. There the partnership retained, after the transfer of a substantial part of its assets to the successor corporation, claims whose liquidation would have provided amply for the creditor, but due to the fact that the debtors on those claims became insolvent, the partnership was unable to pay him. It appeared further that the partners had pledged their shares in the corporation to various creditors of the partnership and to others. As the court there stated, to have permitted the creditor of the partnership to levy on the property of the corporation would have resulted in sweeping away the assets from the secured creditors for the benefit of unsecured creditors.

An examination of authorities outside of this jurisdiction discloses that there is not an entire unanimity on the question of the liability of a corporation which succeeds to the assets of a partnership. Many cases cited as holding there is no such liability will, on closer examination, show no substantial identity between the parties interested in the corporation and the parties interested in the partnership. In *In re Johnson Heart Co.,* 34 Fed. (2d) 183, 184, the court stated that while it seems to be fairly well settled that, if the circumstances attending the succession of a new corporation to the assets of an old corporation are such as to warrant the

conclusion that the new corporation is simply a continuation of the old, it becomes liable for the debts of the corporation from which it has secured its property, "more difficulty is encountered with the question of assumption of liabilities when a corporation has succeeded to the business and assets of a copartnership. But it seems safe to say that the same rule prevails where partners incorporate themselves simply for the purpose of taking over their own assets and continuing their own business." A full citation of authorities will be found in that case and also in *In re J. W. Marshall Co.*, 3 Fed. (2d) 192. See also *2 Cook on Corporations*, 8th ed., section 672; *Andros. v. Morgan*, 62 Ohio 236, 56 N. E. 875; *Baker Furniture Co. v. Hall*, 74 Neb. 78, 107 N. W. 267; *Hall v. Hunter Bros.*, 157 N. Y. 694, 51 N. E. 1091; 15 A. L. R. 1126.

There is no good reason for the application of one principle of liability to corporations succeeding to the assets of corporations or individuals and another when a partnership is concerned. A partnership in substance is a quasi legal entity, and its assets are to be first applied to partnership creditors. When a partnership transfers its assets to a corporation composed of substantially the same members as was the partnership, the creditor cannot be deprived of his prior right against the partnership assets and he may follow these assets into the corporation and enforce payment of his claim therefrom.

It is argued that a creditor should resort to the shares of stock and that these shares in substance represent the property. It is sufficient to say that credit was not given on such security. A creditor should not be forced to speculate on the value of such shares irrespective of whether or not they are equivalent in value to the property whose ownership they represent. Neither should he be subjected to the incidents attendant upon securing a lien or ownership of such shares through processes of execution and then hazard the company's policy with respect to the property so represented. The control over

the property by the corporation reduces the property value of the shares when subjected to sale. See *In re Braus*, 237 Fed. 139. The position of a creditor becomes more difficult where, as here, the stock is that of a small or closed corporation. Such stock is practically unmarketable and in no manner represents the value of the corporation's assets. Nor should the creditor be put to further burden by conducting the business through stock ownership. It would be an inequitable rule to so delay a creditor and to force him to resort to such circuitous methods if we are to see that complete justice is done.

The partners by their transfer of all the assets to the corporation deprived a partnership creditor of the right to have such assets first appropriated to the payment of his claim. There being a substantial identity between the members of the corporation and the partnership, the creditor may pursue the assets of the partnership directly into the hands of the corporation. In the case of *Ziemer v. Bretting Mfg. Co.*, 146 Wis. 252, 133 N. W. 139, the court reached a similar result on facts practically identical with these.

In view of our conclusion, it is unnecessary to discuss appellant's third point regarding the right to issue an execution on a judgment against a decedent without first issuing a sci. fa. against his personal representatives. The execution was not made on the personal property of Samuel Nemirovsky but on the assets of the partnership found in the possession of the corporation. Because of the identification of its shareholders with the parties interested in the partnership, liability followed the property as a matter of law though there was no express assumption of the debt or actual fraud in the transfer.

Judgment affirmed.