546 So.2d 969 (1989)
Don MORRIS and Tina Morris, and Greenville Men's Wear, Inc. Doing Business as the Country Gentleman
v.
Joe MACIONE, Jr.
No. 58512.
Supreme Court of Mississippi.
June 21, 1989.
Rehearing Denied July 26, 1989.
Nick Crawford, Greenville, for appellant.
Charles Victor McTeer, McTeer & Bailey, Greenville, for appellee.
Before ROY NOBLE LEE, C.J., and ROBERTSON and SULLIVAN, JJ.
ROBERTSON, Justice, For the Court:

I.
This dispute concerns performance of a contract between a corporation and a former shareholder. The specific term at issue requires the corporate owner of a haberdashery to extend to a former shareholder a fifty percent (50%) discount on any merchandise he may wish to purchase there for his personal use. The remaining shareholders, seeking to avoid the contract, dissolved the corporation, created a new one and caused the haberdashery's assets to be transferred to the new entity. The Chancery Court saw through the subterfuge and specifically enforced the contract. We affirm.

II.
In the late 1970s, Greenville Men's Wear, Inc. was organized for the purpose of operating a retail clothing store in the Greenville Mall in Greenville, Mississippi. Owning equal shares of the corporation were Joe Macione, Ben Sayle, Ben Sayle, Jr., and *970 Don Morris. Macione and Sayle were to finance the operation; Sayle, Jr. was to provide bookkeeping services to the corporation; and Don Morris was to supervise the day-to-day management of the business. Soon thereafter, the corporation opened "The Country Gentleman" in the mall. Each shareholder and the members of his immediate family were afforded the privilege of purchasing clothing from the inventory of The Country Gentleman at fifty percent (50%) of the retail price.
In 1981, Morris and his wife, Tina, had accumulated enough cash to make a down-payment toward the purchase of all the capital stock in the corporation. Sayle and Macione agreed to sell. In the contract whereby the Morrises purchased all of the capital stock in the corporation, the following clause appears:
After closing and so long as Greenville Men's Wear operates The Country Gentleman or other mercantile establishment in Greenville, Mississippi, sellers or either of them may purchase for their personal use merchandise from the store at fifty (50%) percent of retail price.
The contract made no mention of sellers' family members, the preexisting practice notwithstanding. At the same time, Don and Tina Morris executed a promissory note in favor of Joe Macione and Ben Sayle in the sum of $25,000, payable in $5,000 annual installments, the last installment falling due December 31, 1985. The discount proviso served as additional consideration for the sale to the Morrises.
Morris continued to extend the fifty percent discount to Sayle and Macione for a time. After the final installment of the promissory note had been made, however, Morris declined to continue to extend the discount privilege. All attempts at compromise failed, and each party hired counsel. In corresponding with Macione's attorney, Morris stated that, should Macione insist upon enforcing the discount, the Morrises would simply dissolve Greenville Men's Wear, Inc. and transfer control of The Country Gentleman to a new corporation. Such a move, in counsel's view, would serve to discharge the obligations of the Morrises regarding the discount.
On February 17, 1987, Macione filed suit in the Chancery Court of Washington County requesting the specific performance of the discount provision of the sales contract. The Morrises responded by filing a petition with the Secretary of State to dissolve Greenville Men's Wear, Inc. The Certificate of Dissolution was issued on March 27, 1987. Contemporaneously, the Morrises caused to be formed a new corporation, Morris' Traditionals for Men and Women, Inc. Greenville Men's Wear transferred all of its assets to Morris' Traditionals, which now operates the Country Gentleman. Insofar as the public knew, the business continued as before.
The Chancery Court held that the dissolution was for the principal purpose of avoiding the obligations to Macione and his co-seller under the contract and, as such, ineffective to discharge Greenville Men's Wear, Inc.'s obligation to sell merchandise at a fifty percent (50%) discount to Macione. The Court then ordered
That so long as the defendants, Don and Tina Morris, Greenville Men's Wear, Inc., Morris Traditionals for Men and Women, Inc., or other successor in interest shall operate The Country Gentleman or other mercantile establishment in Greenville, Mississippi, Joe Macione may purchase merchandise from the store or other mercantile establishment for his personal use at fifty percent (50%) of retail price.
From this judgment the Morrises appeal.

III.
Macione's rights lie embedded in a nebulous web of law the centerpiece of which proscribes the fraudulent conveyance. Our law has long provided that a going business concern may not avoid its obligations by transfer of its assets to another. Miss. Code Ann. §§ 15-3-3, et seq. (1972). Procedural safeguards not invoked here have been enacted to protect creditors from transfers out of the ordinary course of business. Miss. Code Ann. §§ 75-6-101, et seq. (1972). We have recently held that a controlling shareholder/corporate officer *971 may not bleed a corporation of its assets to the prejudice of a pledgee of the corporation's stock. Gibson v. Manuel, 534 So.2d 199, 201-04 (Miss. 1988). In the aggregate these principles of positive law empower the judicial conscience that the debt may follow the assets and a remedy may be had against those who cause the transfer and their transferees who take with notice and give less than fair value.
There is like doctrine in the world of contract. It is apparent that the Morrises and their corporate alter ego, Greenville Men's Wear, were of the view that dissolution of the corporation could effectively extinguish their obligations to Macione, this in spite of that "principle of fundamental justice that if a promisor is himself the cause of the failure of performance, either of an obligation due him or of a condition upon which his own liability depends, he cannot take advantage of the failure." 11 S. Williston, A Treatise on the Law of Contracts § 677 (3d ed. 1961); see also 3A Corbin on Contracts § 767 (1960). UHS-Qualicare v. Gulf Coast Community Hospital, 525 So.2d 746, 756-57 (Miss. 1987), is to like effect, viz. "a party to a contract may not take advantage of its own act or omission," citing Dawson's Dependents v. Delta Western Exploration Co., 245 Miss. 335, 343, 147 So.2d 485, 487 (1962); and Callon Petroleum Co. v. Big Chief Drilling Co., 548 F.2d 1174, 1178 (5th Cir.1977).
The Restatement (Second) of Contracts, in declaring extinct conditions subsequent, incorporate this general principle under the rubric "duty of good faith and fair dealing." See Restatement (Second) of Contracts §§ 205, 230(2) (1979). Mississippi ascribes to the view that all contracts contain an implied covenant of good faith and fair dealing. UHS-Qualicare v. Gulf Coast Community Hospital, 525 So.2d 746, 757 n. 8 (Miss. 1987); Blue Cross & Blue Shield of Mississippi, Inc. v. Maas, 516 So.2d 495, 498 (Miss. 1987). An event that may otherwise terminate a duty has no such effect if the party owing the duty thereby breaches his covenant of good faith and fair dealings.
These notions have general force in the corporate realm. A corporate obligor and those who control it may not with impugnity dissolve the corporation in a debt avoidance maneuver and cause its assets to be transferred to a new successor corporation. This is so whether the debt arises in contract, Kulka v. Nemirovsky, 321 Pa. 234, 182 A. 692, 693-94 (1936); Montgomery Web Co. v. Dienelt, 133 Pa. 585, 19 A. 428, 430-31 (1890), quasi-contract, Alexander & Baldwin, Inc. v. Peat, Marwick, Mitchell & Co., 385 F. Supp. 240, 242-44 (S.D.N.Y. 1974), or tort, Tift v. Forage King Industries, Inc., 108 Wis.2d 72, 322 N.W.2d 14, 16-18 (1982).
A remedy against the dissolved corporation is similarly available. Miss. Code Ann. § 79-3-209 (Supp. 1987), as it read at the time,[1] provides:
The dissolution of a corporation ... by the issuance of a certificate of dissolution by the secretary of state ... shall not take away or impair any remedy available to or against such corporation, its directors, officers, or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution ... if action or other proceeding is commenced within the period of limitation for the commencement of such action or other proceeding as prescribed in the applicable statutes of limitation.
This statute reflects a principle long recognized in Mississippi law. Mahaffey Co. v. Russell & Butler, 100 Miss. 122, 125, 54 So. 807, 808 (1911). "Neither law nor equity will permit one corporation to take all the property of another, deprive it of the means of paying its debts, enable it to dissolve its corporate existence, and place itself practically beyond the reach of creditors, without assuming its liabilities." Meridian Light & Railway Co. v. Catar, 103 Miss. 616, 621, 60 So. 657, 658 (1912); see also Marine Oil Co., Ltd. v. Cutler Bros., Inc., 179 So. 485, 487-88 (La. App. 1938); *972 Metcalf v. Arnold, 110 Ala. 180, 20 So. 301, 303 (1896); 15 Fletcher Cyc. Corp., §§ 7327, 7329-30 (perm. ed. 1983).
Enough: What has been said sufficiently founds the Chancery Court's order that the Morrises, their former corporation, Greenville Men's Wear, their new corporation, Morris' Traditionals, and any other successor in interest of the business concern heretofore known as The Country Gentleman, honor the discount provision of the sales contract with Macione.
Nothing said here questions the prerogatives of Greenville Men's Wear, Inc. to dissolve otherwise in accordance with law. By the same token, Macione's rights against Morris' Traditionals for Men and Women, Inc. are limited to the extent this latter corporation has acquired assets of Greenville Men's Wear without paying fair value therefor. Mahaffey Co. v. Russell & Butler, 100 Miss. at 125, 54 So. at 808. The personal liability of Don and Tina Morris arises from their diversion of corporate assets, the legal veil ordinarily limiting their liability rent by their conduct. Gibson v. Manuel, 534 So.2d 199, 201-04 (Miss. 1988).

IV.
By way of cross-appeal, Macione claims that the contract at issue inures to the benefit not only of himself but also of the members of his family. He urges that we reverse insofar as the Chancery Court limited its relief to his personal use purchase. No doubt this was the pre-sale practice, but the contract provides that "sellers or either of them" may purchase merchandise at the discounted rate "for their personal use." The sellers were Macione and Sayle. No other member of Macione's family was a selling party to the contract. The phrase "personal use" by its ordinary meaning in context contemplates the use of Joe Macione, Jr. and him alone. Miss. Code Ann. § 1-3-65 (1972). Had Macione wished to include the members of his family in the bargain, the facilities of our language are legally and linguistically such that this easily may have been done. We will not read into the contract obligations which simply are not there.
AFFIRMED
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
NOTES
[1] This statute has been repealed, effective January 1, 1988. The matter is now covered by Miss. Code Ann. § 79-4-14.06 (Supp. 1988).